THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PETER YANNUCCI, True Name PETER PAUL YANNUCCI, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALFRED DE VIVA, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ANDREW GROSSI, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WALLACE TADDEO, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DOMINICK YANNUCCI, True Name DOMINICK ALOYSIUS YANNUCCI, Appellant.

Second Department, December 4, 1939.

*Samuel S. Leibowitz* [*Erwin N. Schapira* with him on the brief], for the appellants.

*George P. Stier, Assistant District Attorney* [*Charles P. Sullivan, District Attorney*, with him on the brief], for the respondent.

CARSWELL, J. The defendants are of an unworthy type. But the law is to be applied alike to the worthy and the unworthy. There was not sufficient proof of force or fear of bodily harm to establish the crime charged. There was no corroboration, which is indispensable to sustain a conviction for rape. The complainant was of mature age. She was not an inexperienced person. She left a place of safety on the invitation of one of the defendants whose arm was in a sling. What then ensued need not be recounted in detail, but all of it, *not merely part thereof*, must be considered.

On her own story, her subsequent conduct disclosed she was not unaware of that defendant's purpose and in the successive stages she indicated that she was too co-operative to be the victim of a rape. She apparently acquiesced in or welcomed his conduct. She was more concerned with its effect upon the condition of her apparel than she was for her virtue. The same is true with respect to the acts of the other defendants. She apparently rued the affair and told a story of a character that is properly described as one of "feigned or passive or perfunctory resistance." (*People* v. *Carey*, 223 N. Y. 519, 520.) On her own story her resistance was not genuine or active, or proportionate to the inherent needs of the situation. (*People* v. *Carey, supra.*) The requirement of adequate proof of force or fear and of corroboration may not be disregarded. (*People* v. *Manowitz*, 236 App. Div. 809; affd., 262 N. Y. 555.) This rule is founded on centuries of social and legal experience in this type of alleged offense. (1 Hale P. C. [1778 ed.] 633; *People* v. *Hulse*, 3 Hill, 309, 315 *et seq.; People* v. *Friedman*, 139 App. Div. 795, 796.) The law wisely recognizes that some complainants are designing or vicious. If it were not for the rule of corroboration, a defendant would be at the mercy of an untruthful, dishonest or vicious complainant.

The judgments of the County Court of Queens county convicting the defendants of the crime of rape in the first degree should be reversed on the law, the indictment dismissed, and the defendants discharged from custody.

In each case: LAZANSKY, P. J., ADEL and CLOSE, JJ., concur; HAGARTY, J., dissents in opinion and votes to affirm the judgments.

HAGARTY, J. (dissenting). I dissent and vote for affirmance of the judgments convicting the defendants of the crime of rape in the first degree.

The complainant, an unmarried Englishwoman of the age of twenty-five years, had been in this country for approximately two months prior to the time of the alleged rape. She specialized in botany after her graduation from Oxford University, and accepted an offer of employment by the Carnegie Institute at Cold Spring Harbor, Long Island, and was there employed at the time of the occurrence which resulted in the indictment of these defendants.

Complainant, having missed a train to Syosset, on Long Island, was seated in the Jamaica station of the Long Island Railroad, in the early hours of the 4th day of December, 1938. The defendant Peter Yannucci approached her at about three o'clock, and engaged her in conversation. On his invitation, she accompanied him out of the station to a nearby restaurant " to have a cup of

coffee." At the front entrance to the restaurant, he informed her that it was "shutting up." He then led her to a lot in the rear, used for the parking of automobiles and upon which there was a structure, described as a "shack," ostensibly for the purpose of obtaining entrance to the restaurant. Yannucci then made advances. The complainant struggled and tried to get away, pushed him back and tried to run. Yannucci had hold of the corner of her coat. Again she pushed him back and ran, but he maintained his hold on her and she in turn got hold of his left arm, which was in a sling. He managed to twist it away. She was trying to hit him and he "was ducking and trying to avoid me." Yannucci is a professional pugilist. Suddenly, three of the other appellants appeared and told her that they were policemen "and they threatened that if I made a noise or didn't shut up and do what they told me, they would carry me off." In addition to these four appellants, a non-appealing defendant and two or three other unidentified men had intercourse with her, not only in the shack, but later in an automobile which was parked behind the shack. Some had intercourse "by the back, and some by the mouth," of which the medical proof is corroborative.

The appellant Peter Yannucci previously had been convicted of the crimes of sodomy and vagrancy. The appellant Taddeo had been twice convicted of stealing automobiles. The appellant Grossi previously had been arrested three times on charges of injuring railroad property, grand larceny and burglary, and had been twice convicted. The appellant Dominick Yannucci had been twice convicted of disorderly conduct and vagrancy. The appellant DeViva had been twice arrested for larceny, but had not been convicted. These appellants argue, successfully, that complainant consented to this mass attack on her or, at least, that she could have opposed more vigorous resistance to their combined efforts.

Subdivision 3 of section 2010 of the Penal Law, upon which the indictment was predicated, presents but two questions: *First*, was complainant's resistance prevented by fear of immediate and great bodily harm; and, *second*, did she have reasonable cause to believe that such harm would be inflicted upon her? The jury has answered in the affirmative. A question of fact was presented. She testified that, when so confronted by these four defendants and brought to a realization of the nature of her predicament, she became completely paralyzed, speechless and numb. She begged Peter Yannucci, the first of the alleged rapists, not to do anything to her. She became sick and faint and was so exhausted and weak at the completion of the successive attacks that she could

offer no resistance when the defendants, one of them supporting her, took her to the automobile. I am of opinion that this testimony may not be ignored or harmonized with the theory that hers was a feigned or perfunctory resistance, amounting to acquiescence.

The jury was entitled, under the circumstances, to believe the complainant. There is no proof that she had had any previous experience. Immediately upon her release by the defendants at about six o'clock in the morning, she returned to the station of the railroad company where an employee observed her nervous and distraught condition, "and her hair was all mussed up. She was carrying her glasses in her hand." She made disclosure to him and immediately upon her arrival at the Carnegie Institute the same day to a married woman who was a co-employee. She was taken to a physician for examination that same evening. The doctor, however, found it necessary to postpone the physical examination to the next day because "she was very nervous and disturbed, excited, shaky," and he administered morphine as a sedative. The ensuing medical examination disclosed that force inconsistent with normal intercourse had been exerted. The appellants admit the intercourse, but, of course, deny the rape. In my opinion, this corroborative proof was more than sufficient. The verdict was just, and the judgment should be affirmed.

In each case: Judgment of the County Court of Queens county, convicting the defendant of the crime of rape in the first degree, reversed on the law, the indictment dismissed, and the defendant discharged from custody.