Nathan R. Sobel, J.
The Supreme Court in Miranda v. Arisona and companion cases (384 U. S. 436) took unusual pains to make explicit the new constitutional rules and guidelines governing the admissibility of incriminating statements obtained during “ custodial'interrogation. ”
But the Supreme Court decides cases; it usually avoids giving advisory opinions. In all the four cases decided, the defendants were interrogated.in the inherently custodial atmosphere of the police station; all were “ on target ” in the sense that the investigation had focused to the certain extent that interrogation was “accusatory” and not “investigatory.” These were, therefore, the precise factual premises the Miranda decision discussed.[1]
The Miranda court does not, therefore, discuss the effect of the new constitutional rules and guidelines upon incriminating statements elicited by the police in response to “routine” questions upon the taking of the accused into “ first ” custody.[2]
My necessarily limited research into the place of occurrence of “ confessions ” indicates however that a substantial majority of all confessions are obtained elsewhere than at the police station. These are quite often followed however by more formal statements in the police station.
The question of course is whether such oral “ routine ” questioning may constitute “ custodial interrogation ” requiring the fourfold warning[3] mandated by Miranda.
The consequence of leaving such a frequently recurring issue open to disagreement is obvious. Police officers should be *899 informed immediately of the correct procedures to be employed. Trial Judges too require immediate appellate direction lest meir work come to naught.[4]
The instant case presents one such “routine” questioning issue. It can serve as a vehicle for prompt appellate direction for police and prosecutors.
* * *
A statutory hearing has been held to suppress an admission against interest.[5] (Code Crim. Pro., § 813-h; People v. Huntley, 15 N Y 2d 72.)
The hearing established the following: Police officers responding to a police call were informed by the complainant that she had been forcibly raped a few hours earlier by the defendant (her son-in-law) at his home. The officers, the complainant and her paramour proceeded to the defendant’s home. Present upon their arrival were the defendant and his wife (the daughter of the complainant).
Q. Did you go there for the purpose of making an arrest officer? A. I did.
Q. From this point on will you tell us your conversation with the defendant? A. I asked the defendant if he raped his mother-in-law. The defendant said “No” he did not; he had intercourse with her but with her consent. He was then placed under arrest and removed to the 88th precinct station house.
Q. You went there officer for the purpose of making an arrest. A. I did.
Q. You were going to make an arrest on the basis of the accusation made by the [complainant]. A. That’s correct.
Q. Would you have permitted the defendant Henry Allen to leave the room before you commenced the interrogation? A. No sir I would not.
It was established that the police officer did not give any of the fourfold warnings required by Miranda.
The District Attorney concedes that without the “ admission ” by the defendant there is clearly insufficient “ other evidence ” *900 to support the charge by the complainant (Penal Law, § 2013; People v. Downs, 236 N. Y. 306; People v. Page, 162 N. Y. 272; People v. Yannucci, 258 App. Div. 171; People v. Doyle, 158 App. Div. 37). My decision may therefore receive prompt appellate review. (Code Crim. Pro., § 518-a.)
I rule that the incriminating statement is not admissible. I rule that under the precise holding of Miranda an incriminating answer to a single routine question may be the product of custodial interrogation requiring as an absolute condition of admissibility, the giving of the fourfold warning. I read Miranda as holding that such warning is required at the point where “ a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” (384 U. S. 436, 444.)
I necessarily hold under such a construction of Miranda that: It does not matter that the question was asked in the defendant’s home rip on “ first ” custody rather than in the police station.
* * *
Nor that the question was asked prior to “ arrest ” so long as the defendant was not at such time free to go.
* * *
Nor that there was not present the “ interrogation atmosphere and environment ” (see Part I of Miranda) for it is not “ coercion ” but the privilege against self-incrimination which is the “ new ” standard.
Quite obviously the defendant in the instant case was “ on target” and was “ not free to go.” The more difficult and predictably also a recurring problem will arise when the police officer testifies that his decision to arrest turned on the answer he might receive. This is discussed briefly infra.
* * *
Before discussing the precise holding of Miranda it is helpful to consider some decisions of high State and Federal courts applying Escobedo (Escobedo v. Illinois, 378 U. S. 478) principles to routine questioning outside the police station. I emphasize however that while such decisions are helpful, these are no longer controlling. While Miranda reaffirms Escobedo (p. 477) it is quite clear that its commanded standards go very far beyond even those broadly applied by the California Supreme Court (People v. Dorado, 62 Cal. 2d 338; cf. People v. Gunner, 15 N Y 2d 226).
In People v. Stewart (62 Cal. 2d 571, affd. with Miranda, 384 U. S. 436) the California Supreme Court ruled that *901 despite “focus” and “ custody ” the accusatory or critical stage does not mature under Escobedo unless in addition the police undertake a “ process of interrogations that lends itself to eliciting incriminating statements ” (Escobedo, supra, pp. 490-491; see also id., pp. 485, 492). Under such a construction of Escobedo, routine and casual questioning at “ first ” custody was deemed purely investigatory. As such, these incriminating answers were admissible without the advice or warning mandated by Dorado, supra. (See People v. Jacobson, 63 Cal. 2d 319 [casual questioning in home and police car]; People v. Cotter, 63 Cal. 2d 386 [routine questioning at scene and in police car]; Ballard v. Superior Court, 410 P. 2d 838 [Cal.] [in home by means of listening device]; People v. Treloar, 410 P. 2d 620 [Cal.] [routine questioning in police car].) Other California cases discuss the issue but find the interrogation “accusatory.” (People v. Bilderback, 62 Cal. 2d 757 [single question but in police station after long detention]; People v. Stockman, 63 Cal. 2d 494 [burden on People to establish that interrogation was “investigatory” not “accusatory”]; People v. Furnish, 63 Cal. 2d 511 [discussed infra].)
People v. Furnish (supra) discusses an issue pertinent to the instant case. Furnish was questioned before arrest in the police station. At the time, the police were not certain whether he or his wife was responsible for the death of their child. The prosecutor urged that “ arrest ” alone signals the commencement of the accusatory stage. The court replied (p. 516):
“ Of course in some situations where an investigation has focused on a particular suspect the authorities may, for reasons of their own and without advising the suspect, choose to detain him although he had not been formally placed under arrest. In that case the danger that such tactics may result in incriminating statements is as great as if the suspect had been formally arrested. In other words, if the formality of an arrest were a strict condition precedent to the advent of the accusatory stage, the police could, by delaying the arrest where the situation did not demand one, circumvent the accused’s right to counsel and nevertheless subject him to tactics designed to elicit incriminating statements.
“We are satisfied that, although an arrest ordinarily signals the advent of the accusatory stage, the fact of an arrest is not essential to the maturing of that stage. ’ ’
Thus, in the instant case if “ custodial interrogation ” means solely police station interrogation, police would be encouraged to conduct all interrogation outside the police station. If inter *902 rogation becomes custodial only after “arrest” police could circumvent the constitutional safeguards merely by delaying arrest.
Federal courts, too, under Escobedo, have permitted casual and routine questioning. The Second Circuit cases are of greater interest to our State courts. In United States v. Robinson (354 F. 2d 109) routine and casual questioning without full warning in a Buffalo city police station was permitted. In United States v. Cone (354 F. 2d 119) similar questioning on the street immediately after apprehension was approved. There were dissents in both cases; in Cone there were several concurring opinions. Judge Anderson, ■ who concurred in Cone and dissented in Robinson, states the majority concensus in this way: “It [right to assistance of counsel] attaches after sufficient evidence has been uncovered to constitute probable cause and after supplemental questioning of a casual nature (i.e., short of ‘a process of interrogation’ characterized as a grilling) incidental to the arrest or a search and seizure, and close to it in time and place. It attaches when, thereafter, the interrogation becomes accusatory.” (p. 117).
I note in the margin other cases which discuss routine and casual questioning.[6]
* * *
Miranda holds that it is the Fifth Amendment’s privilege against self incrimination which is now to be applied in determining the admissibility of confessions. [7]
What I perceive to be the prime difference between Miranda and Escobedo is the fundamental difference between applying the Fifth Amendment’s “privilege” and the Sixth Amendment’s “assistance of counsel” to proceedings before or at the police station.
*903 Thus Escobedo: “ We hold only that when the process shifts from investigatory to accusatory — when its focus is on the accused and its purpose is to elicit a confession — our adversary system begins to operate, and * * * the accused must be permitted to consult with his lawyer.” (Escobedo, 378 U. S. 478, 492, supra.)
Cf. Miranda: ‘ ‘ The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any way. It is at this.point that our adversary system of criminal proceedings commences, distinguishing itself at the outset from the inquisitorial system recognized in some countries. Under the system of warnings we delineate today or under any other system which may be devised and found effective, the safeguards to be erected about the privilege must come into play at this point.” (p. 477).
The new standard is “compulsion” — not “coercion” under the “traditional” rule, or “critical stage” under the “no counsel ” rule. The State and Federal decisions heretofore discussed are no longer relevant since they speak in terms of “ focus ” and “ accusatory stage ” terms which trigger the “ critical stage.”
“Compulsion” under the Fifth Amendment and its State counterpart does not have its precise dictionary meaning.[8] It has no relationship to ‘ ‘ coercion ’ ’ and is applicable in many settings not related to any “ critical stage.” Compulsion is simply questioning in any setting (civil proceeding, administrative or departmental hearing, Grand Jury and all court proceedings) where a criminal fact may be elicited.
For example in New York, one subpoenaed before a general investigating Grand Jury is deemed “compelled” if he answers any inquiry.[9] It is difficult to see how anyone “ arrested ” is less “ compelled.”
*904 I read Miranda to hold that the mere “ fact of custody ” is inherently “ compulsive ” in its Fifth Amendment sense; that as soon as a person is deprived of “his freedom of action ” adversary proceedings commence and the privilege protects him from questioning, routine or otherwise, which seeks to elicit a criminal or clue fact. The safeguard of the privilege applies as fully as it does before the Grand Jury or at the trial.
To summarize, what the court has done is to move the commencement of “ adversary proceedings ” to the point of “custody” — backwards from “focus” in point of time. This the court deemed essential when “ compulsion ” rather than “ critical stage ” became the new test.
Miranda’s precise language, it seems to me, does not permit of any other conclusion:
‘ ‘ By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” (p. 444). * * *
“ Today, then, there can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed from being compelled to incriminate themselves. We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual’s will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.” (p. 467). * * *
“ To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities and is subjected to questioning, the privilege against self-incrimination is jeopardized.” (p. 478).
Because the Supreme Court decides issues on the facts before it, there is some language in the opinion which, considered outside the context of discussion, would indicate that the new rules apply to interrogation in the police station or other police-dominated environment “unfamiliar” and “menacing” — but not to routine questioning in one’s home with family present. Such reasoning would be appealing if the test were ‘ ‘ coercion. ’ ’ But the new constitutional standard is “compulsion.” The safeguard of the privilege is afforded *905 when the proceedings become “adversary”; the proceedings become adversary “when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any way.” (p. 477). The plain reading of the opinion requires a holding that the test is “custody” and that “custody” may occur in one’s own home as well as at the police station.
Presumably when a police officer is merely investigating there will be no custody[10] if the questioning takes place outside the police station. Since the burden of proof is on the People, the police officer’s testimony of his subjective intention not to “arrest” should not suffice. An objective test is required — one which encompasses in scope primarily the prior existence of probable cause to arrest — but also the place, the nature, the duration of the questioning and all other relevant circumstances. Whether the interrogation was in fact custodial should not turn on the actual or professed intent of the police officer but rather on all the objective evidence.
The instant case, of course, presents no problem. Not only does the police officer testify that he intended to arrest but his duty left no other course open to him. No refusal to answer, no denial, no exculpatory statement of the defendant would have excused a failure to arrest. The interrogation was clearly custodial. In the absence of the “warnings ” the incriminating statement is not admissible.
* * *
Miranda will create some temporary problems in pending cases not yet reached for trial. In such cases the police understandingly did not give the fourfold warning.
Since Miranda, police have presumably been alerted to the circumstances under which such warnings must be given. In my opinion the fourfold warning should be given before engaging in any “first” custody questioning at the scene, upon “ arrest ” and in the police car.
I would believe that the kind of “answers” police have, in the past, obtained from casual “ routine ” questioning will also be obtained in the future after the warnings. These, it may be noted, create fewer “ ultimate ” issues of waiver. As Miranda notes: ‘[1] An express statement that the individual *906 is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver.” (p. 475). (Italics supplied.)
The motion to suppress is granted. To facilitate appeal, the indictment is dismissed without objection from the District Attorney.

. The Miranda court did in one respect depart from the “ facts ” of the eases. It made clear that the new rules and guidelines did not apply of course to “volunteered” statements, i.e., those not elicited, by interrogation. “Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.” (p. 478).

. “ First ” custody most often is at the scene of the crime or upon “ arrest ” elsewhere. It includes routine questioning in the police car on the way to the station.

. “He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.” (p. 479).

. A decision by the prosecutor not to utilize a “ suspect ” confession does not always end the problem. Quite often the confession taints fruits of the crime. On occasion the fact of felony is discovered only as a result of the tainted confession. E.g., a perfectly lawful search may uncover proceeds of several crimes. The police officer asks “Where did you steal the fur coat?” without giving the required warning.

. “ The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant. No distinction can be drawn between statements which are direct confessions and statements which amount to ‘admissions’ of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely ‘ exculpatory.’ ” (p. 476, 477).

. Evalt v. United States, 359 F. 2d 534; Morales v. United States, 344 F. 2d 846; United States v. Gorman, 355 F. 2d 151; United States v. Konigsberg, 336 F. 2d 844, 853; State v. Meyers, 140 N. W. 2d 891 [Iowa]; Turney v. State, 395 S. W. 2d [Ark.]; State v. Evans, 407 P. 2d 621 [Ore.]; see, also, (issue discussed but decided on other grounds) United States v. Del Llano, 354 F. 2d 844; United States v. Drummond, 354 F. 2d 132; United States v. Williams [2d Cir. 4/26/66]; People v. Chaney, 408 P. 2d 964 [Cal.]; People v. Carrillo, 50 Cal. Rep. 185; People v. Ing, 51 Cal. Rep. 317; People v. Friedberg, 24 A D 2d 1008.

. Whether this is a “new” rule or a precise and more exacting standard under the “ traditional ” involuntary rule, it is certain that appellate and trial courts (and juries) will no longer have to deal with issues of voluntariness in terms of “coercion”. (See Sobel, The Exclusionary Rules in the Law of Confessions, N. Y. L. J., Nov. 15-23, 1965.) The sole issues will be “ custody,” “ warning ” and “ waiver.”

. See discussion in Sobel, The Privilege against Self-Incrimination “ Federalized,” 31 Brooklyn L. Rev., Dec. 1964 1, 19-22.

, In New York it does not matter whether the person subpoenaed is a target (accusatory stage) or a mere witness against others (investigatory stage). His privilege is deemed violated if he is asked and answers any question. (People v. Gillette, 126 App. Div. 665.)
In California, by statute (see Penal Code, § 1323.5) a “ target ” is incompetent to testify before a Grand Jury. (People v. Sharer, 61 Cal. 2d 869.)
It is as yet doubtful whether such a consequence is commanded by Federal due process standards. (See United Stales ex rel. Laino v. Warden, 246 F. Supp. 72.) But predictably it will be under Miranda,

. Our court statistics indicate otherwise. I estimate that 25% of all adult felony “ arrests ” are dismissed on the merits at the preliminary arraignment or examination. (See Sobel, Crime in New York City, The Mortality Table, 30 Brooklyn L. Rev., Dec. 1963, 12-16.) Perhaps the Supreme Court is concerned with this problem. (See 16 L. Ed. 2d 728.)