THE STATE OF OHIO, APPELLEE, *v.* PERRY, APPELLANT.

(No. 41168—Decided June 12, 1968.)

*Mr. David D. Dowd, Jr.*, prosecuting attorney, and *Mr. Ira G. Turpin*, for appellee.

*Messrs. Berkman, Gordon & Kancelbaum, Mr. Bernard A. Berkman* and *Mr. Joshua J. Kancelbaum*, for appellant.

O'NEILL, J. The first question which this court must determine is: Does the exclusionary rule announced in *Miranda* v. *Arizona* (1966), 384 U. S. 436, require the court to exclude the testimony of the police officer, who apprehended the appellant, concerning the inculpatory statements appellant made to that officer at the scene of the crime, for the reason that such statements were made prior to the giving of any warnings and for the reason that no counsel was present?

It is the opinion of this court that, in the instant case, the exclusionary rule announced in *Miranda* does not require the exclusion of the testimony of the police officer concerning the appellant's inculpatory statements made to that officer at the scene of the crime.

In *Miranda*, after the court noted the inherent unreliability of compelled confessions and recognized the respect which a government must accord the individual liberties of its citizens, the court held, at pages 444 and 445:

"* * * the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant

way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned."

The decision in *Miranda* has been the subject of wide comment by the bar, academicians and the general public. Against the background of constitutional development, in which reliance was placed upon the flexible and often elusive concept of due process, *Miranda*, at first blush, may appear to represent a sharp break with historical precedents and to establish rigid rules for the regulation of police procedures. See dissenting opinion of Harlan, J., in *Miranda*, page 504, *et seq.*; Kamisar, A Dissent from the Miranda Dissents—Some Comments on the "New" Fifth Amendment and the Old "Voluntariness" Test, 65 Mich. L. Rev. 59 (1966); President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 303-310 (1967) (Supplemental statement).

However, in attempting to create a structure wherein the liberties of individual citizens and the investigative powers of police officers may be maximized, the court in *Miranda* did not announce a rigid and inflexible rule.

In defining "custodial interrogation," the court said, at page 444 in *Miranda*, "we mean *questioning initiated by the law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." In other words, after a person has been restrained by police officers, the officers may not *initiate* any questioning or interrogation before the person is accorded an explanation of his constitutional rights. Moreover, the court in *Miranda*, at page 478, recognized that "volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." The court stated that:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. * * *"

Thus, it is the "compelling influence" to confess which renders the confession inadmissible if made while in custody and in the absence of warnings or of counsel. See Sobel, The New Confession Standards, *Miranda* v. *Arizona* (1966).

The proposition that volunteered statements do not come within the protection of the Fifth and Sixth Amendments to the United States Constitution has been recognized and stated in varying factual contexts both before and after the decision in *Miranda*. See, *e. g.*, *Hicks* v. *United States* (C. A. D. C. 1967), 382 F. 2d 158; *Arnold* v. *United States* (C. A. 9 1967), 382 F. 2d 4; *Taylor* v. *Page* (C. A. 10 1967), 381 F. 2d 717; *Davidson* v. *United States* (C. A. 10 1966), 371 F. 2d 994; *Delgado* v. *Cancel* (C. A. 1 1966), 363 F. 2d 105; *Lamb* v. *Peyton* (D. C. Va. 1967),

262

273 F. Supp. 242; *Commonwealth* v. *Lopinson* (1967), 427 Pa. 284, 234 A. 2d 552; *People* v. *Sanchez* (1967), 65 Cal. 2d 814, 423 P. 2d 800; *People* v. *Tahl* (1967), 65 Cal. 2d 719, 423 P. 2d 246; *Commonwealth* v. *Eperjesi* (1966), 423 Pa. 455, 224 A. 2d 216; *People* v. *Dorado* (1965), 62 Cal. 2d 338, 398 P. 2d 361. But see, *People* v. *Bryant* (1967), 87 Ill. App. 2d 238, 231 N. E. 2d 4.

While clearly appellant was deprived of his freedom of action when, after giving chase, the police officer apprehended him, appellant's inculpatory statement that "he had never done anything like this before" was voluntary and in no sense compelled. The officer had not initiated any questioning when the statement was made. Having been summoned to investigate suspicious activities at the car wash and having seen men flee from that location, the officer (legitimately) could seek clarification of the appellant's ambiguous, but inculpatory, admission. The officer was not required to prevent appellant from continuing his explanation of his activities at the scene. The admissions were not the compelled product of custodial interrogation initiated by law enforcement officers, but were voluntary statements made while in custody. Accordingly, the cases of *Westover* v. *United States* (1966), 384 U. S. 436 (companion case to *Miranda*); *Commonwealth* v. *Jefferson* (1967), 423 Pa.. 541, 226 A. 2d 765; *People* v. *Terrell* (1967), 53 Misc. 2d 32, 277 N. Y. Supp. 2d 926; *People* v. *Reason* (1966), 52 Misc. 2d 425, 276 N. Y. Supp. 196; *People* v. *Glover* (1966), 52 Misc. 2d 520, 276 N. Y. Supp. 2d 461; and *People* v. *Allen* (1966), 50 Misc. 2d 897, 272 N. Y. Supp. 2d 249, relied on by appellant, are not dispositive of the instant case.

Therefore, under the standards established in *Miranda,* the trial court did not err in permitting the police officer to testify as to inculpatory statements made by appellant at the scene of the crime prior to any warnings being given and when no counsel was present.

The second question which this court is required to determine is: Did the trial court deny appellant due process of law in violation of the Fourteenth Amendment to the

United States Constitution by submitting appellant's confession to the jury and instructing the jury that it should determine whether the confession was voluntarily made and, if it found that the confession was not voluntarily given, it should disregard it and determine the guilt or innocence of the defendant from all the other evidence.

In *Jackson* v. *Denno* (1964), 378 U. S. 368, the Supreme Court of the United States held the New York procedure which permitted a jury to find a confession involuntary, disregard it, and determine guilt from the other relevant facts and circumstances in evidence, to be constitutionally impermissible under the Fourteenth Amendment to the United States Constitution. Describing the New York rule the court said at page 377:

" * * * the trial judge must make a preliminary determination regarding a confession offered by the prosecution and exclude it if under no circumstances could the confession be deemed voluntary. But if the evidence presents a fair question as to its voluntariness, as where certain facts bearing on the issue are in dispute or where reasonable men could differ over the inferences to be drawn from undisputed facts, the judge 'must receive the confession and leave to the jury, under proper instructions, the ultimate determination of its voluntary character and also its truthfulness.' "

The inherent, and often unprovable, unreliability of the jury's determination of voluntariness and guilt or innocence based on other evidence, required, the court said, that the procedure followed in New York be deemed constitutionally defective.

Prior to the decision in *Jackson,* courts in Ohio followed a rule which, in certain instances, mirrored the procedure condemned in *Jackson.* See *e. g., Burdge* v. *State* (1895), 53 Ohio St. 512, 42 N. E. 594; *Rufer* v. *State* (1874), 25 Ohio St. 464; *Spears* v. *State* (1853), 2 Ohio St. 584.

For example, in paragraph three of the syllabus of *Burdge* v. *State, supra,* this court said:

"Where confessions of the defendant are offered in evidence on a criminal prosecution, and it is claimed that

they were not voluntary; the preliminary proof as to whether they were obtained by the influence of hope or fear, may, if the evidence is conflicting, be submitted to the jury, under instructions to disregard the evidence, if satisfied that the confessions were involuntary."

Clearly, the procedure sanctioned in the *Burdge case* would be unconstitutional under the rule announced in *Jackson.*

Nevertheless, the court, in *Jackson,* noted that the orthodox rule and the Massachusetts rule provided constitutionally adequate due process safeguards for determination of the issue of voluntariness. The court said, at page 378:

" * * * In jurisdictions following the orthodox rule, under which the judge himself solely and finally determines the voluntariness of the confession, or those following the Massachusetts procedure, under which the jury passes on voluntariness only after the trial judge has finally and independently resolved the issue against the accused, the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record. * * * "

The court thus recognized that these two procedures assure an accused of a reliable determination of voluntariness.

Since the decision in *Jackson,* this court has not had an opportunity to review its prior decisions on this issue in light of the constitutional standards announced in *Jackson.* Since that decision, the lower courts of the state have not had clear guidelines regarding the procedure to be followed in Ohio. Cases antedating *Jackson,* are no longer controlling and this court has not expressed its view on the correct procedure to be followed. In this period the lower courts, within the framework announced in *Jackson,* have had limited discretion to determine the proper procedure to be applied. Constitutionally they could follow either the orthodox or the Massechusetts rule.

It is in this setting that the action of the trial court in the instant case must be viewed.

A preliminary hearing on the question of the admissibility of the confession was held out of the presence of the jury. Both the state and the appellant presented evidence on the question of voluntariness. The atmosphere under which the confession was made, the extent, under the standards required by *Miranda,* to which appellant was informed of his constitutional rights, and the question whether appellant's confession resulted from a voluntary waiver of those rights, were closely examined by the trial judge. At the conclusion of the hearing, the judge ruled the confession admissible. Such a ruling indicates that the court found the confession to be voluntary. There is nothing in the record to dispute this.

The fact that the trial court permitted the jury to determine the guilt or innocence of the appellant, even if they found the confession involuntary, is not fatal, for, "given the integrity of the preliminary ·proceedings before the judge," the jury's subsequent consideration of the question of voluntariness did not prejudice the rights of the appellant. *Jackson* v. *Denno, supra,* page 378, n. 8. Under the Massachusetts rule, after the judge has fully and independently resolved the issue against the accused, the jury re-examines the voluntariness of the confession and, if it finds the confession involuntary, determines guilt or innocence from the other evidence presented. There is nothing in the record to indicate that the procedure followed by the trial court in determining the question of voluntariness violated the due process standards asserted in *Jackson.*

The third question which this court must decide is: In permitting the jury to consider the voluntariness of the confession without an instruction to consider whether the warnings required by *Miranda* had been given, did the trial court deprive appellant of due process of law in violation of the Fourteenth Amendment to the United States Constitution?

Appellant has failed to show that the rule of pro-

cedure adopted by the trial court in determining the voluntariness of appellant's confession violated the due process requirements established in *Jackson*. Accordingly, upon consideration of the record, this court concludes that no reversible error was committed by the trial court's failure to instruct the jury to consider whether the warnings required by *Miranda* were given.

However, as to the future cases, this court prefers the orthodox rule under which the judge himself solely and finally determines the voluntariness of the alleged confession of the accused and the question is not submitted to the jury. The question of the truthfulness and the weight to be given to the confession are, of course, jury questions.

Since this court has determined that the confession was properly submitted to the jury, the evidence before the jury was sufficient to support its verdict. The appellant's contention that without the appellant's confession there was insufficient evidence to support the jury's verdict is, therefore, no longer relevant.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, HERBERT, SCHNEIDER and BROWN, JJ., concur.