William A. ROBERTSON, Appellant,

v.

UNITED STATES, Appellee.

No. 80–24.

District of Columbia Court of Appeals.

Argued Nov. 20, 1980.

Decided April 2, 1981.

M. Michele Gilligan, appointed by the court, for appellant.

R. Dennis Osterman, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher and Wayne P. Williams, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

After a jury finding of guilty as to the charge of embezzlement, D.C. Code 1973, § 22–1202, appellant challenges his conviction on the grounds that his arrest was accomplished in violation of the Fourth Amendment and that statements attributed to him at the time of arrest did not meet the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant also perceives error in the trial court's refusal to allow him to present testimony regarding instances of deficient wages paid to other employees as probative evidence bearing on his own claim

of right defense.[1] For reasons set forth below, we affirm.

## I

On June 17, 1978, Mr. Walter Abney, owner of Abney's Amoco, a gas station located in the Northwest section of Washington, D.C., discovered a shortage of $601.99. After reviewing the checkout sheets submitted by the employees for each work shift, Mr. Abney determined that the shortage occurred during the third shift (10:00 p. m. to 6:00 a. m.) of June 16, 1978. Appellant, the only employee on duty during those hours, was responsible for the collection of all money received and for deposit of the money in a locked floor safe. On June 18, 1978, Officer Richard E. Lewis, responding to an assignment to investigate the matter, interviewed Mr. Abney and was apprised of the circumstances surrounding the loss. Officer Lewis later completed an offense report indicating that appellant was suspected of the theft. This information was subsequently placed on a police teletype for dissemination to other precincts.

Upon checking the teletype on June 18, Officer Purcell M. Gregory learned that appellant was wanted for embezzlement. Although an arrest warrant had not been obtained for the alleged felony, Officer Gregory went to the address listed on the teletype as appellant's. Appellant was not present, but the officer spoke with his mother and left a telephone number, requesting that appellant contact him. Shortly thereafter, appellant called and, in turn, indicated a place where he could be reached. In order to ascertain appellant's present location, the station clerk called appellant to verify the address, which was given as 1137 Harvard Street, N.W. This information was transmitted to Officer Gregory who, together with his partner, proceeded to that location.

As the officers approached the residence, they were met at the door by appellant and were requested to enter. In doing so, Officer Gregory asked appellant if his name was William Robertson; he responded affirmatively. The officer then told appellant he was under arrest and stated, "do you know why I'm here." Again responding affirmatively, appellant immediately began to explain that he had been "ripped off" by his employer. Officer Gregory interrupted appellant and advised that he need not speak about the matter. He then orally advised appellant of his *Miranda* rights. However, appellant stated that he had nothing to hide, that Mr. Abney had been unfairly withholding wages from him and other employees, and that he had taken $200 because it was owed to him by his employer. At no point after being advised of his rights was appellant asked any questions, nor did he make any other statements, other than as set forth above.

At the motions hearing, appellant sought to have his statement suppressed, primarily upon two grounds: (1) that it was the fruit of an illegal arrest, and (2) that the statement was the result of an impermissible custodial interrogation. Rejecting both grounds, the court denied appellant's motion to suppress.

## II

■ Relying upon *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and *Dorman v. United States*, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970), appellant contends that the warrantless entry by the police into his residence for the purpose of effecting an arrest violated his right of privacy in circumstances which the Constitution protects.

For at least a decade, *Dorman* has stood as a guide in this jurisdiction, illustrative of the concept that, in general, it is a judicial function to determine whether there is probable cause to justify entry into a private residence to effect a law enforcement purpose. In that case, the police, in an attempt to locate and arrest a suspect believed to have committed an armed robbery,

1. As an additional ground of relief, appellant alleges that the trial court erred in admitting certain records in evidence under the business records exception to the hearsay rule. We find this contention to be wholly without merit and thus conclude that no such error occurred.

entered a private residence without a warrant. This action was taken after a discussion with an Assistant United States Attorney regarding the administrative delays involved in obtaining a warrant. While affirming the conviction the court observed that

> the requirement of a warrant may be excused where circumstances do not tolerate delay, like that incident to obtaining a warrant, of an officer making an arrest. But the basic principle, *the constitutional safeguard* that, with room for exceptions, assures citizens the privacy and security of their homes unless a judicial officer determines that it must be overridden, *is applicable not only in case of entry to search for property, but also in case of entry in order to arrest a suspect.* [*Id.* at 318, 435 F.2d at 390 (emphasis added).]

Significantly, in applying this concept of judicial scrutiny to both arrests and searches, the court recognized that a citizen could validly consent to an entry into a dwelling for either purpose.[2]

More recently, in *Payton v. New York, supra,* the Supreme Court was faced with two distinct factual situations in which the police made warrantless entries into the dwellings of suspects in order to effectuate arrests. Neither consent nor exigent circumstances were present in either case to justify the warrantless intrusions.[3] The Court held that the Fourth Amendment "prohibits the police from making a warrantless and *nonconsensual* entry into a suspect's house in order to make a routine felony arrest." *Id.,* 445 U.S. at 576, 100 S.Ct. at 1375 (emphasis added).

Given the facts in this instance, we find that neither the *Payton* nor *Dorman* cases are controlling. On appeal, appellant does not argue that Officer Gregory did not have probable cause to make the arrest, but rather that the entry into the dwelling in the absence of a warrant to effectuate the arrest was unconstitutional. However, it is clear from the record that when the officers approached the door to appellant's house they were invited in by appellant. There is no indication that appellant's invitation was the result of police coercion or undue influence. Thus the officers' entry into the dwelling was on the basis of appellant's consent voluntarily given. Since it has long been held that a warrantless arrest supported by probable cause is constitutionally permissible, *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), and that one may waive his constitutional rights by freely and intelligently giving consent, *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Judd v. United States,* 89 U.S.App. D.C. 64, 190 F.2d 649 (1951), we hold that the officer's entry into the dwelling of appellant was not in violation of the Fourth Amendment. Thus, the present case may be distinguished from the *Payton* and *Dorman* cases in that consent was not at issue in either of those cases whereas it is a pivotal factor here.

### III

Appellant also argues that the motions court erred in failing to suppress the incriminating statement made in response to Officer Gregory's remark "do you know why I'm here." He contends that his statement was the result of an impermissible custodial interrogation which violated the holding in *Miranda v. Arizona, supra.* Last Term, the Supreme Court addressed the concept of custodial interrogation in *Rhode*

---

**2.** "Subject to exceptions for circumstances, [the Fourth Amendment] prohibits invasion of the privacy of the home by *unconsented* entry unless need therefor has been determined by a warrant." *Dorman v. United States, supra* at 319, 435 F.2d at 391 (emphasis added).

**3.** In articulating the issue presented in *Payton,* the Court was careful to emphasize the narrowness of its inquiry:

> [W]e have no occasion to consider the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either arrest or search. . . . Finally, in both cases we are dealing with entries into homes made without the consent of any occupant. [*Payton v. New York, supra,* 445 U.S. at 583, 100 S.Ct. at 1378].

*Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), stating:

> *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response. [*Id.* at 1689–90 (emphasis in original) (footnote omitted).]

We find that no impermissible custodial interrogation was involved here since Officer Gregory's statement, taken in context, would not normally elicit an incriminating response. Prior to asking him "do you know why I'm here," Officer Gregory informed appellant that he was under arrest. He was, therefore, in custody. However, as soon as appellant began to make his statement, the officer interrupted to advise him of his right to remain silent and to seek the advice of a lawyer. Appellant, on the other hand, chose to continue his statement despite the warnings. The question asked simply called for a "yes" or "no" answer. No further elaboration was necessary. It cannot reasonably be assumed that the intent of Officer Gregory was to evoke an incriminating response,[4] or that appellant could have reasonably perceived that the question required the type of response that he gave. Nor can it be said that Officer Gregory should have known that it was reasonably likely to elicit an incriminating response. Rather, we find that appellant voluntarily waived his right to remain silent when he decided to continue to make his statement. *See Miranda v. Arizona, supra,* 384 U.S. at 478, 86 S.Ct. at 1630 ("[v]olunteered statements of any kind are not barred by the Fifth Amendment ...").

## IV

Finally, appellant would have us find error in the court's refusal to allow evidence purporting to show that other employees were allegedly improperly denied a portion of their wages by the same employer, Mr. Abney. This evidence was offered to establish a claim of right defense on behalf of appellant. It should first be noted that appellant was charged with embezzling $601.99 from his employer while he only claimed to be entitled to $200. Under these facts we doubt that appellant was entitled to any instruction on the claim of right defense.[5] However, we find that the trial court properly excluded the proffered

---

**4.** There is no indication from the record nor was it argued that Officer Gregory had such an intent. *Compare* the present case *with People v. Lowe,* 616 P.2d 118 (Colo.1980) (en banc). In *Lowe,* appellee was arrested and taken to the police station. Before advising him of his *Miranda* rights, a detective asked appellee, "Do you know why you are here?" Appellee responded, "I know. I kind of thought you would be to the house at 6:00." Appellee was then advised of his *Miranda* rights. At trial, the detective testified that he had no intention of advising appellee of his rights until the latter made a statement. Thus, the Supreme Court of Colorado held that this was impermissible custodial interrogation since the intent of the detective was to elicit an incriminating response from the appellee. *Id.* at 122. *See also*

*Commonwealth v. Brant,* —— Mass. ——, 406 N.E.2d 1021 (1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980).

**5.** *Compare Smith v. United States,* D.C.App., 330 A.2d 519 (1974) (appellant was not entitled to an instruction on the claim of right defense where the amount allegedly obtained by him was $30 while the amount taken from the robbery victim exceeded $500) *and Rhodes v. United States,* D.C.App., 354 A.2d 863 (1976) (same) *with Richardson v. United States,* 131 U.S.App.D.C. 168, 403 F.2d 574 (1968) (appellant was entitled to a claim of right instruction where the amount allegedly owed to him ($270) far exceeded the amount taken from the robbery victim ($98)).

testimony of the former employees since any alleged shortage in wages that occurred between themselves and Mr. Abney was irrelevant to appellant's claim of right defense. *See Poteat v. United States*, D.C. App., 363 A.2d 295, 296 (1976) (the relevancy of evidence is determined by whether it relates to an issue in the case). Moreover, the trial court has wide discretion in determining the admissibility of evidence on the question of relevancy. *United States v. Morgan*, 189 U.S.App.D.C. 155, 158, 581 F.2d 933, 936 (1978). We find no abuse of discretion in this case. Thus, the conviction is

*Affirmed.*