### John A. HOWARD, Appellant,

v.

### UNITED STATES, Appellee.

### No. 81–1152.

District of Columbia Court of Appeals.

Submitted Sept. 30, 1982.

Decided Nov. 16, 1982.

Russell F. Canan, Washington, D.C., court-appointed, for appellant.

Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at time brief was filed, John R. Fisher and Robert K. Reed, Asst. U.S. Attys., Washington, D.C., for appellee.

Before KERN and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.

PER CURIAM:

On May 18, 1981, appellant was convicted by a jury of first-degree burglary while armed, D.C.Code 1981, §§ 22–1801(a), –3202, rape while armed, D.C.Code 1981, §§ 22–2801, –3202, and carrying a pistol without a license, D.C.Code 1981, § 22–3204. At trial, the prosecution evidence established that on the morning of August 12, 1980, a man identified as appellant entered several apartment buildings on the 1300 block of Saratoga Avenue, Northeast,

---

holding himself out as a member of the Howard University Police, on the pretext of investigating reported robberies. There was further evidence that appellant followed the complainant into the building in which her aunt had an apartment, gained entry to the apartment where the victim was alone, and there raped her at gunpoint.

In his defense, appellant tried to establish that he had met the victim several weeks prior to the incident and that they had arranged a tryst at the apartment of complainant's aunt. Appellant claimed the charges against him were the result of a serious fight he and the victim had had during this encounter. On appeal, appellant claims that the trial court erred in denying his pretrial motion to suppress certain statements he made while in custody.[1] Finding no error, we affirm.

Detective Joanne Hammett of the Metropolitan Police Department, the only witness to testify at the hearing of the suppression motion, stated that on August 14, 1980, she and Detective Terrell removed appellant from the morning lineup after his arrest to examine him for any cuts or other lacerations he might have suffered in attempting to subdue the victim who herself received bruises and cuts during their struggle. (Record at 72.) After this examination was completed, Detective Hammett began an interview of appellant, asking his name, birthdate, and employment status. When the detective looked through appellant's case jacket she discovered that appellant had signed a *Miranda* rights card indicating that he did not wish to speak to police without an attorney present. (Record at 73.) Detective Hammett then asked if appellant wished to make a statement. When appellant replied that he did not, the detective attempted to conclude the interview. (Record at 72–73.) Appellant, however, pressed Detective Hammett for the details of his case. Specifically, appellant asked at least four times the name of the complainant. (Record at 74.)

After the fourth request the following exchange took place:

I [Detective Hammett] said, "Well, you don't know her. She doesn't know you. So her name is not going to mean anything to you." He [appellant] said, "Well, I might know her." So I said, "Do you know Marietta Washington?" He shook his head from side to side. He said, "That bitch! I didn't think she'd go that far." So I asked him again. I said, "Do you know Marietta Washington?" He said, "I been knowing her. But," he said, "I didn't think she'd do this." And then he went on to tell me that there were two sides to every story. His side would come out in court. (Record at 74–75.)

In truth, the complainant's name was not Marietta Washington. Detective Hammett testified that she had made up the name Marietta Washington in order to end appellant's questioning concerning the name of the complainant. The detective did not feel that it was proper to reveal the complainant's true name in the face of appellant's unwillingness to discuss his side of the case. (Record at 75–76.)

Appellant asserts error in the trial court's refusal to suppress these statements as the product of a police interrogation of appellant in violation of his *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree. The Supreme Court recently stated in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), that:

[S]ince police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response. [*Id.* at 301–02, 100 S.Ct. at 1689–90 (emphasis in original) (footnote omitted).]

---

1. Appellant also claims error in the trial court's refusal to allow the testimony of several witnesses proffered by the defense at trial. The trial court apparently found that the proffered testimony was not sufficiently probative to counterbalance its propensity to confuse or mislead the jury. *Brown v. United States,* D.C. App., 409 A.2d 1093 (1979). We find no abuse of discretion in this trial court ruling. *See Hardy v. United States,* 118 U.S.App.D.C. 253, 254, 335 F.2d 288, 289 (1964).

The trial court did not err in concluding, on this record, that Detective Hammett neither intended to invoke an incriminating response nor 'should have known' that her comment (in essence a response to a repeated question of appellant) would elicit such a response. In *Robertson v. United States,* D.C.App., 429 A.2d 192 (1981), this court held that appellant in that case had "voluntarily waived his right to remain silent ...," *id.* at 195, when he made an incriminating response to the question, put to him by the arresting officer: "Do you know why I'm here?" *Id.* at 194–95. In the present case, appellant through his persistent questioning of Detective Hammett, and despite her attempts to cut off the interview, effectively waived his *Miranda* rights with respect to the statements in question.[2]

Accordingly, the judgment must be and is *Affirmed.*

---

2. *Robertson* cannot be distinguished by the fact that, in that case, the officer interrupted the incriminating statement to advise the suspect of his *Miranda* rights. Detective Hammett demonstrated scrupulous regard for appellant's rights and appellant indicated explicitly that he understood the nature of these rights. See for example the following exchange between appellant and Detective Hammett:

I [Detective Hammett] asked him [appellant] if he was aware of the charges against him and he said yes he was.

I said, "Well, do you want to give me a statement with regards to these charges?" He said, "No, because if I give you a statement you will give it to the prosecutor." I told him that was correct. Anything that he told me I would give to the prosecutor and it could be used against him in court.

He said, "Well, that's why I am not going to give a statement. I don't want to prove the prosecutor's case." (Record at 74.)