**The STATE of Ohio, Appellant,**

v.

**SPAIN, Appellee.**

[Cite as *State v. Spain* (1992), 76 Ohio App.3d 643.]

Court of Appeals of Ohio,
Union County.

No. 14–91–21.

Decided March 5, 1992.

*R. Larry Schneider*, Prosecuting Attorney, and *John C. Heinkel*, for appellant.

*John W. Dailey, Jr.*, for appellee.

---

THOMAS F. BRYANT, Judge.

This is an interlocutory appeal from a ruling of the Court of Common Pleas of Union County granting defendant-appellee's motion to suppress evidence

allegedly obtained in violation of his *Miranda* rights. This appeal is brought by the state pursuant to R.C. 2945.67 and Crim.R. 12(J).

On September 19, 1990, defendant-appellee, Todd A. Spain, was arrested pursuant to a bench warrant. He was taken to the police station by Sergeant Nicol and escorted to Lieutenant Coutts's office. When appellee arrived in Lieutenant Coutts's office, Lieutenant Coutts asked appellee, "Do you know why you're here?" Appellee then allegedly made an incriminating statement. The trial court granted appellee's motion to suppress that statement.

On appeal, the state asserts one assignment of error:

"The trial court erred in granting defendant's motion to suppress statements of the defendant, volunteered by the defendant after a law enforcement officer asked the defendant 'Do you know why you are here?'"

*Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, requires police officers to advise a suspect of his right to remain silent, his right to an attorney and his right to have an attorney appointed if he is unable to afford one before he is questioned about the crime for which he is a suspect. The *Miranda* safeguards are required when a suspect has been taken into custody and is subjected to interrogation.

"Interrogation" has been defined as "not only * * * express questioning, but also * * * any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnotes omitted.) *Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–1690, 64 L.Ed.2d 297, 308.

It is undisputed that appellee was in custody at the time he was taken to Lieutenant Coutts's office, having been arrested on a bench warrant. Lieutenant Coutts testified that he did not read appellee his *Miranda* rights before asking him, "Do you know why you're here?" He testified that it was his intent to read the *Miranda* rights after appellee answered the question. He further testified that he asked appellee this question because appellee was "in Municipal Court on a number of charges" and he wanted to make sure appellee understood which charge he wanted to question him about.

Lieutenant Coutts testified that he did not know what the bench warrant was for, but he wanted to question appellee about the charge that is the subject of this prosecution—unauthorized use of a motor vehicle. He testified as follows:

"Q. What was it that you wanted to question him about?

"A. The unauthorized use of the motor vehicle.

"Q. And you knew he was a suspect on that?

"A. Yes.

"Q. And you knew he had been arrested[?]

"A. Yes."

It is clear from a review of the record that Lieutenant Coutts was not asking a question normally attendant to arrest and custody when he asked appellee if he knew why he was in his office. On the contrary, Lt. Coutts admitted that it was his express intention to interrogate appellee regarding an offense for which Lt. Coutts considered appellee to be a suspect. Under these circumstances, we can only conclude that this interview was a custodial interrogation. See *Rhode Island v. Innis, supra.* Accordingly, we believe appellee was entitled to receive the *Miranda* warnings prior to being questioned.

The ruling of the Court of Common Pleas of Union County is affirmed.

*Judgment affirmed.*

SHAW, J., concurs.

EVANS, J., dissents.

EVANS, Judge, dissenting.

This case requires us to determine, based only on the facts of record, whether appellee, Todd A. Spain, was compelled to incriminate himself due to deliberately coercive or improper tactics on the part of law enforcement officials. Because I find that appellee in this case was not subjected to "custodial interrogation" as defined by the United States Supreme Court, the Supreme Court of Ohio, and this court, I respectfully dissent from the majority's decision to affirm the trial court's granting of appellee's motion to suppress. See, *e.g., Arizona v. Mauro* (1987), 481 U.S. 520, 530–531, 107 S.Ct. 1931, 1937–1938, 95 L.Ed.2d 458, 468–469; *Rhode Island v. Innis* (1980), 446 U.S. 291, 299, 100 S.Ct. 1682, 1688–1689, 64 L.Ed.2d 297, 306–307; *State v. Perry* (1968), 14 Ohio St.2d 256, 262, 43 O.O.2d 434, 438, 237 N.E.2d 891, 895; *In re Potts* (Aug. 17, 1978), Allen App. No. 1–78–15, unreported, at 11.

The court in *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, set out the guideline for states to follow in order to preserve criminal suspects' Fifth Amendment rights to avoid coerced self-incrimination. *Miranda* mandates that all individuals who are taken into official custody must be advised of their constitutional rights under the Fifth and Sixth Amendments, and be given the chance to voluntarily waive those rights before being interrogated about suspected misbehavior. Thus, law enforcement officials will ensure that statements made by suspects are voluntary and uncoerced.

Although the *Miranda* court suggested that the failure to administer the warnings would create a presumption of coercion when a suspect is in police custody, the court later refused to read *Miranda* so restrictively, stating,

"We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Oregon v. Elstad* (1985), 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222, 235. Indeed, as stated by the *Miranda* court, "Confessions remain a proper element in law enforcement * * *. Volunteered statements of any kind are not barred by the Fifth Amendment * * *, [and] [a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

The prosecution in this case conceded, and with this concession I agree, that appellee was "in custody" for purposes of *Miranda*. However, I do not agree that appellee, in the given circumstances, was subjected to "interrogation" which would render the statement at issue inadmissible as evidence at trial. The Supreme Court has cautioned courts against extending *Miranda*'s protections further than originally intended:

"In deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in *Miranda* and *Edwards* [*v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378]: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." *Arizona v. Mauro* (1987), 481 U.S. 520, 529–530, 107 S.Ct. 1931, 1937, 95 L.Ed.2d 458, 468.

The action of Lieutenant Coutts in this case does not undermine this purpose in any way. Appellee was seated not in an "interrogation room," but opposite the lieutenant in his private office, unfettered and unhandcuffed. No one else was present in the room. I do not find any coercive elements in this scenario which would have rendered the simple preliminary question asked of appellee a "ploy" to "subjugate the individual to the will of [an] examiner" in order to elicit an incriminating response. See *Innis*, 446 U.S. at 299, 300, 100 S.Ct. at 1688–1689, 64 L.Ed.2d at 306–307 (" 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."). See, also, *Miranda*, 384 U.S. at 468, 86 S.Ct. at 1624, 16 L.Ed.2d at 720; *Minnesota v. Murphy* (1984), 465 U.S. 420, 433, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409, 423 ("the coercion inherent in custodial interrogation derives in large measure from an interrogator's insinuations that the interrogation will continue until a confession is obtained"). Furthermore, I see no evidence even of "subtle compulsion," which the

Supreme Court rejected as equating with coercion in *Innis*. *Id.*, 446 U.S. at 303, 100 S.Ct. at 1691, 64 L.Ed.2d at 309.

My research has uncovered only one published case in which the precise question, "Do you know why you are here?" was asked of a suspect, followed by an incriminating response which was suppressed by the trial court. In *People v. Lowe* (1980), 200 Colo. 470, 616 P.2d 118, a detective, before advising a suspect of his *Miranda* "rights," asked him, "Do you know why you are here?" However, based on the attendant facts, I am unpersuaded by the *Lowe* holding. A careful reading of *Lowe* reveals that "the detective [admittedly] *intended* to elicit an incriminating response from the defendant," and thus "should have known that his question was reasonably likely to elicit an incriminating response from the defendant." Accordingly, the Colorado court found that, *"given the circumstances of this case * * * [t]he* trial court properly suppressed the defendant's response to this question." (Emphasis added.) *Id.*, 200 Colo. at 475, 616 P.2d at 122 (citing *Innis*, 446 U.S. at 302, 100 S.Ct. at 1690, 64 L.Ed.2d at 308) ("since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response").

I find that other cases, based on their facts and rationale, *i.e.*, their substance, rather than the mere form of a question buried in facts very unlike those in this case, are more analogous to the situation before us. See, *e.g.*, *State v. Dixon* (1991), 25 Conn.App. 3, 9, 592 A.2d 406, 410 (Police officer's question, "What are you doing here?" asked of defendant following his arrest, was not an "interrogation" for *Miranda* purposes; rather, question was aimed at determining nature of situation confronting police, and there was no indication that question was likely to elicit incriminatory response); *Robertson v. United States* (D.C.App.1981), 429 A.2d 192, 195 (officer's question, "Do you know why I'm here?" asked of newly arrested suspect was not impermissible custodial interrogation, since, taken in context, it would not normally elicit an incriminating response; such question simply calls for a "yes" or "no" answer).

Lt. Coutts testified at the suppression hearing that he had no intent to elicit an incriminating statement from appellee, asserting that he simply wanted to make sure appellee understood which of several pending charges he was to be questioned about:

"A. My intent was for the defendant, Mr. Spain, to understand why I wanted to interview him. I did not expect any type of a response that I got, an incriminating response. I expected a yes or no answer."

.

As stated by the District of Columbia Court of Appeals, "We may not assume, contrary to the evidence at the suppression hearing, that [the officer] intended to evoke an incriminating response by his statement to [the suspect]." *Hawkins v. United States* (D.C.App.1983), 461 A.2d 1025, 1030, at fn. 6, certiorari denied (1984), 464 U.S. 1052, 104 S.Ct. 734, 79 L.Ed.2d 193.

Furthermore, I agree with appellant that the question posed to appellee was in the nature of a "routine formality," similar to asking a suspect in custody whether he understands the charges against him. See *State v. White* (Me. 1983), 460 A.2d 1017, 1021 (suspect's "blurting out" of incriminating admission in response to routine "preliminary" question was found to be voluntary, and not the result of official interrogation).

I conclude that appellee's statement was given voluntarily, free of any compelling or deceptive influence. In my view, the proper action for us to take in the circumstances of this case would be to reverse the judgment of the trial court and remand the case for a trial on the issues.