OPINION
This appeal is taken by defendant-appellant Joe Brooks from the judgment convicting him of possession of heroin entered by the Court of Common Pleas of Marion County.
On August 21, 1998, at approximately 8:30 A.M., corrections officers at the Marion Correctional Institution received information that Joe Brooks and Julius Ward, both inmates at the prison, possessed heroin. After a search of their personal living space and the day room, a room where the inmates can watch television or play cards, the officers located three packets of heroin and a syringe.
Upon discovery of the drugs, a corrections officer obtained urine samples from both Ward and Brooks. The urine was properly stored and tested by separate testing facilities for the presence of illicit drugs.
On December 10, 1998 Joe Brooks was indicted on one count of possession of heroin, a felony in the fifth degree. Brooks entered a plea of not guilty at his arraignment on December 14, 1998. After a trial by jury, Brooks was found guilty on May 14, 1999. Immediately following the jury's verdict, the trial court sentenced Brooks to eleven (11) months in prison to be served consecutive to his existing sentence. On appeal from that conviction Brooks makes the following assignments of error:
 1. The trial court erred to the prejudice of the Defendant-Appellant by permitting into evidence a statement made by the Appellant during a custodial interrogation when the Appellant was not advised of his right against self-incrimination, and other inadmissible evidence.
 2. Defendant's conviction for possession of heroin was not supported by sufficient evidence and was, in fact, against the manifest weight of the evidence. The trial court erred in denying Defendant's motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure.
 3. The trial court erred in imposing an eleven (11) month sentence to be served consecutively to a prior prison term for a fifth degree felony when the lower court did not make any specific findings of fact warranting imposition of such a sentence, and did not advise the Defendant-Appellant of post release controls, bad time or other sanction as mandated by Ohio Revised Code Section 2929.19(B)(3).
Brooks' initial claim is that the trial court erred by admitting into evidence a statement he made during a custodial interrogation without prior Miranda warnings thus violating hisFifth Amendment right against self-incrimination. At the outset we observe that the trial court has broad discretion in determining the admissibility of evidence. Evid.R. 104. Any error alleged in the admission of evidence must be shown by establishing that the trial court abused its discretion. State v.Sage (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. The term "abuse of discretion" implies that the court's ruling was "unreasonable, arbitrary, or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173,404 N.E.2d 144, 148.
The appellate courts of Ohio have consistently held that "an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."State v. Williams (1977), 51 Ohio St.2d 112, 117 citing State v.Gordon (1971), 28 Ohio St.2d 45. 276 N.E.2d 243; State v.Lancaster (1971), 25 Ohio St.2d 83, 267 N.E.2d 291; State v.Davis (1964), 1 Ohio St.2d 28, 203 N.E.2d 357; State v. Glaros
(1960), 170 Ohio St. 471, 166 N.E.2d 379. The fact that an appellant has raised a federal constitutional question does not change this rule. Id. at 117.
However, the reviewing court may overturn an unpreserved issue for plain error. State v. Craft (1977), 52 Ohio App.2d 1,367 N.E.2d 1221. "A `plain error' committed by a trial court and reviewable on appeal, is an obvious error shown by the record which is prejudicial to an accused although neither objected to nor affirmatively waived, which, if allowed to stand would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." Id. at paragraph one of syllabus. To demonstrate plain error the appellant must show that but for the error "the outcome of the trial clearly would have been otherwise." State v. Evans (1992), 63 Ohio St.3d 231, 241, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
The record reveals that Brooks made the following statement to Trooper Kevin Smith, an investigator for the Ohio State Highway Patrol, on September 22, 1999:
 "I don't know anything about that, those pictures or that evidence.
 I pled guilty to a dirty urine test."
At trial, Trooper Kevin Smith was called to testify on behalf of the State. In his testimony he reported that statement made by Brooks. Counsel for Brooks made no objection to its admission. As a result, this court will overturn the decision of the trial court to admit the Trooper's testimony only upon a showing of plain error.
Brooks claims that the admission of the above testimony was indeed plain error and prejudiced the outcome of the trial because the statement was made during a custodial interrogation by Trooper Smith that occurred without prior Miranda warnings and thus violated his Fifth Amendment right against self-incrimination.
The Fifth Amendment to the United States Constitution provides that an individual shall not "be compelled in any criminal case to be a witness against himself". The Supreme Court has extended the protection of the Fifth Amendment right against self-incrimination to police interrogation of individuals in custody. Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, requires that before an individual in custody may be interrogated police officers must advise him of his constitutional rights to remain silent, to obtain an attorney or have an attorney appointed by the State if he is unable to afford one.
"Interrogation" has been defined as "not only * * * express questioning, but also * * * any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." State v. Spain (1992),76 Ohio App.3d 643, 644 citing Rhode Island v. Innis (1980),446 U.S. 291, 301, 100 S.Ct. 1682, 1689-1690.
It is undisputed that Brooks was in custody when he spoke with Trooper Kevin Smith at the Marion Correctional Institution. Trooper Smith testified that once Brooks was in the office, he identified himself and began to lay pictures of evidence out on the table and told Brooks that he was being interviewed concerning possession of heroin and at that point he had not read Brooks hisMiranda rights. He further testified that Brooks began talking to him without any solicitation. He testified that the following conversation occurred between the two:
 Brooks: I don't know anything about that, those pictures, or that evidence. I pled guilty to a dirty urine test. How would you convey this into the Institution, because I don't get any visitors.
 Smith: Well you're not being accused of conveyance. Just that you basically possessed it, and you possibly could be indicted out of this criminal case.
 Brooks: I pled guilty to a dirty urine. I don't know anything about the evidence, and you can write the report up anyway you want to. Well, forget it.
After this conversation the interview was terminated.
The testimony outlined above discloses that Brooks statement was not solicited by Trooper Smith. Moreover, Smith testified that he did not display the evidence before reading him hisMiranda rights in order to elicit an incriminating response. In fact, Smith further testified that it is common practice for police investigators before interrogation to introduce themselves, explain their reasons for the interview and display the evidence. As a result, it would appear that Smith was following procedures that were normally attendant to custody prior to interrogation and this court cannot say that a police officer would reasonably expect the display of evidence to elicit an incriminating response. Because Brooks has failed to show that he was being interrogated at the time the statement was made we are unable to agree that his Fifth Amendment right against self-incrimination was violated or that plain error resulted from the admission of Trooper Smith's testimony.
In his first assignment of error Brooks also contends that the trial court erred in the admission of several other pieces of evidence. Specifically he claims that the trial court erred when it admitted State's exhibits 3A, 3B, 5, 5A, 8, 10A, 10B, and 15. He does not claim that each and every separate evidentiary admission was an abuse of discretion by the trial judge. Rather he claims that although each error taken alone may be harmless the cumulative effect of the admissions was prejudicial and the conviction must be reversed.
As stated above, in order to show an error in the admission of evidence by the trial court the appellant must show an abuse of discretion. However, the Supreme Court of Ohio has held that "[a]lthough violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. In order for the appellant to show cumulative error he must demonstrate that but for the errors there was a reasonable probability that the outcome of the trial would have been different. State v. Moreland (1990), 50 Ohio St.3d 58,552 N.E.2d 894.
Brooks' initial assertion is that State's Exhibit 3A (a property control form), 3B (Chemist Tammy Bonner's notes), 5 (Urine samples, Brooks), 5A (Aliquots), and 15 (MCI records/Brooks) were improperly admitted because they were not properly identified. The requirements for identification and authentication of evidence are contained in the Ohio Rules of Evidence. Rule 901 states:
 (A) * * * The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
Evidence Rule 901(B) contains examples of how authentication or identification may be performed. The list is not exhaustive. Some examples include:
 (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.
 (4) Distinctive Characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.
 (9) Process or system. Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.
The record reveals that Tammy Bonner, a criminalist for the Ohio State Patrol Crime Lab, testified that exhibits 3A and 3B were her notes taken with regard to this case and the property control form that she filled out. With regard to exhibits 5 and 5A, Randy Shears, the mandatory drug coordinator who performed the urine tests, testified that exhibit 5 was indeed the urine sample obtained from Joe Brooks. James Ferguson, the Chief Toxicologist and Director of Forensic Toxicology for the Franklin County Coroner's office, performed one of the laboratory tests on the urine sample. During his testimony he identified exhibit 5A as an aliquot or sample of the urine obtained from Brooks and matched it to the corresponding name label. Finally, exhibit 15 was identified as Department of Rehabilitation and Corrections Report on Inmate Joe Brooks by Trooper Kevin Smith an Investigator for the Marion Correctional Institution and one familiar with the records kept there.
Brooks further asserts that State's exhibits 5 (Urine samples/Brooks), 5A (Aliquots), 8 (Brooks opiate confirmation), 10A (Transparency) and 10B (Transparency) lacked proper foundation and thus were admitted in error. Foundation consists of preliminary questions to a witness to establish admissibility of evidence. "Laying foundation" is a prerequisite to the admission of evidence at trial. As a result, foundational requirements revolve around relevance. All relevant evidence is generally admissible unless proven otherwise. Evid.R. 402. By establishing that a piece of evidence is relevant to the case at hand or the issue in question then the proper foundation has been laid.
The record discloses that exhibits 5, 5A, and 8 were relevant to the case at hand because they helped establish the defendant's use of heroin. Exhibits 10A and 10B were merely transparencies offered as demonstrative exhibits of evidence already properly admitted and were thus relevant. All of the items Brooks has objected to had an adequate foundation for admission.
In summary, all of the pieces of evidence that Brooks has claimed were admitted in error have been shown to be proper admissions. Since there has been no error much less harmless error, this court cannot say that there has been cumulative error.
No error having been shown either in the admission into evidence of Brooks' statement to Trooper Smith or the State's exhibits offered at trial Brooks' first assignment of error is overruled.
Brooks next asserts that the decision of the jury to convict was not supported by sufficient evidence and even if there was sufficient evidence it is still unjust because the weight of the evidence was in favor of acquittal. Initially, we observe that "on the trial of a case, either civil or criminal, the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Indeed, a judgment may be reversed on the weight of the evidence only if there is a concurrence of all three judges hearing the cause on appeal. Section 3(B)(3), Article IV, Ohio Constitution.
The legal concepts of sufficiency of the evidence and weight of the evidence are different. "Sufficiency is a term of art meaning that the legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 382. To reverse a judgment of a trial court when there is insufficient evidence to support it, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary. Id. at paragraph three of the syllabus.
A claim that the verdict was against the manifest weight of the evidence does not mean that the evidence to convict was insufficient or inadequate. "Weight of evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. In reviewing a claim that the conviction was against the manifest weight of the evidence the court considering the entire record:
 "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, paragraph three of the syllabus.
The power to reverse a conviction and order a new trial is discretionary and should only be used in exceptional circumstances when the evidence weighs significantly against the conviction. Id.
at paragraph three of the syllabus.
Possession of heroin is a violation of R.C. 2925.11(A), a felony in the fifth degree. R.C. 2925.11(A) provides:
 No person shall knowingly obtain, possess, or use a controlled substance.
The testimony offered by the State at trial in favor of conviction demonstrated that on August 21, 1998, corrections officers located three packets of heroin and a syringe in the Day Room of Dorm 5 of the Marion Correctional Institution where Brooks resided.
Thereafter, Corrections Officer Randy Shears obtained a urine sample from Brooks. Shears testified that Brooks urinated into a cup, sealed the cup himself, and initialed the cup. Bar codes were placed on the specimens to further assure proper control of the evidence.
The Brooks' urine sample was subsequently sent to three different laboratories. The uncontradicted testimony of James Ferguson indicated that Brooks' urine sample contained traces of heroin and its residue. His testimony consisted of the following in pertinent part:
 Q: Okay. And what then could you conclude with regard to these first three chemicals with regard to Joseph Brooks?
 A: The particular combination of codeine, morphine and monoacetyl morphine came from heroin.
 Q: And is there any other explanation to a reasonable degree of scientific certainty?
A: Not for the presence of monacetyl morphine.
* * *
 A: * * * Codeine and morphine could come from what are called licit, legal sources, but monacetyl morphine is no a drug.
Q: What do you mean it's not a drug?
 A: It is not a legal drug. It is not manufactured as a drug anywhere in the United States. It can only come from the breakdown of diacetyl morphine, and diacetyl morphine is heroin. Heroin is a schedule one substance.
In addition, Brooks admitted to Trooper Kevin Smith that he pled guilty to a dirty urine test before the Rules Infraction Board at the prison.
The testimony heard by the jury and outlined in part above demonstrates that Brooks knowingly used heroin. He did so by admission of use before the Rules Infraction Board and the urine tests confirmed the presence of the drug in his system. As a result, we find that the evidence offered to convict Brooks of possession of heroin is sufficient.
Brooks also claims that as a whole, the manifest weight of the evidence supported an acquittal not a conviction. The assessment of the credibility of witnesses and their testimony is a jury function. As a result, it must be remembered that the jury at trial heard all of the evidence, was instructed as to the law and found Brooks guilty beyond a reasonable doubt.
The portions of the record outlined above along with the corroborating testimony offered by Trooper Kevin Smith and Randy Shears that, if believed, support a finding of Brooks' guilt beyond a reasonable doubt and thus conviction, rather than acquittal. Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of the crime of possession of heroin proven beyond a reasonable doubt. Therefore we do not conclude that the jury lost its way or that by its verdict has caused a miscarriage of justice. No error having been shown, Brooks' second assignment of error is overruled.
In his final assignment of error Brooks claims that the trial court erred during the sentencing proceeding by failing to make specific findings of fact, by imposing a consecutive sentence and by failing to advise him of post release controls and other sanctions as required by Ohio law. At the outset we observe that the sentencing provisions set forth in the Revised Code are to be strictly construed against the state and liberally construed in favor of the accused. R.C. 2901.04(A). Moreover, this court has held that "R.C. 2929.19 mandates that the court make findings supporting its sentence on the record at the sentencing hearing. A mere recitation by the trial court that it has considered the matters required by the sentencing statutes will not suffice."State v. Martin (June 23, 1999), Crawford App. No. 3-98-31, unreported.
The sentencing guidelines and mandates are contained within R.C. Chapter 2929. R.C. 2929.19(B)(2) provides in pertinent part:
 [At the sentencing hearing] [t]he court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentencing imposed in any of the following circumstances:
 (a) * * * if it imposes a prison term for a felony of the fourth or fifth degree * * *, its reasons for imposing the prison term, based upon the overriding purposes and principles of felony sentencing set forth in section 2929.11 of the Revised Code, and any factors listed in divisions (B)(1)(a) to (h) of section 2929.13 of the Revised Code that it found to apply relative to the offender.
The purposes and principles of felony sentencing set forth in R.C.2929.11 are:
 * * * to protect the public from future crime by the offender and others and to punish the offender.
Section 2929.13 states:
 (B)(1) * * * in sentencing an offender for a felony of the fourth or fifth degree, the sentencing court shall determine whether any of the following apply:
 (a) In committing the offense, the offender caused physical harm to a person.
 (b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
 (c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
 (d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.
 (e) The offender committed the offense for hire or as part of an organized criminal activity.
 (f) The offense is a sex offense that is a fourth or fifth degree felony violation * * *.
(g) The offender previously served a prison term.
 (h) The offender previously was subject to a community control sanction, and the offender committed another offense while under the sanction.
The record reveals that Joe Brooks was convicted of possession of heroin, a felony of the fifth degree. At the sentencing hearing immediately following the verdict the court made the following statements on the record:
 On each of the Defendants, there will be a finding, of course, that they were serving a prison term when this offense occurred, which is one of the requisite findings on a Felony 5 for imposition of [a] prison term.
 Considered the overriding principals regarding sentencing, the guidelines contained in Chapter 2929, find it appropriate to sentence each of the two defendants to their own separate terms of eleven months, that time to run consecutively to their underlying sentence.
The trial court noted on the record that in order to impose the eleventh month prison term on Joe Brooks it must make a finding that he is currently serving a prison term. However, the mandatory sentencing guidelines do not include a provision for that particular finding made by the trial court in2929.13(B)(1)(a)-(h). Specifically, 2929.13(B)(1)(g) reads:
The offender has previously served a prison term.
When interpreting a statute the words contained therein must be given their common, plain, and ordinary meaning unless a contrary intention clearly appears or is otherwise indicated. 85 Ohio Jurisprudence 3d (1988) 254-255, Statutes, Section 241; Cahill v. Dayton Bd. of Zoning Appeals (1986), 30 Ohio App.3d 236, 30 OBR 394, 507 N.E.2d 411. "Previously" as defined by the American Heritage Dictionary means "existing or occurring prior to something else in time or order; antecedent." In contrast, "currently" as defined by the American Heritage Dictionary means "belonging to the present time; now in progress." According to the dictionary, the two words are not synonymous and, bearing in mind that the language contained within the Revised Code is to be strictly construed against the State, the two words will not be deemed synonymous by this court.
Because the legislature has chosen to establish a sentencing guideline couched in language of the past rather than present tense, thus requiring completion of a prior prison sentence, we may not interpret "previously served a prison term" to include the first prison term which a convict is presently serving to be a prison term that individual has previously served, for purposes of imposing a consecutive sentence for a subsequent offense committed in prison while serving that first term. Undoubtedly, punishment for such an infraction lies elsewhere within the comprehensive sentencing and rehabilitation scheme of which this statutory section is only a small part.
Brooks also asserts that the trial judge erred because he failed to advise the Defendant-Appellant of post release controls, bad time or other sanction as mandated by R.C. 2929.19(B)(3). A review of the record in this case reveals that the trial court completely ignored the mandates of 2929.19(B)(3). Indeed, after imposing the eleven month sentence, the trial court failed to advise Brooks of anything. Thus we find that the trial court erred as a matter of law by failing to notify and advise Brooks in accordance with 2929.13(B)(3).
Since the trial court did not make a finding permitting imposition of consecutive sentences nor did it advise the defendant of possible post-conviction sanctions, it did not comply with the sentencing guidelines of R.C. 2929.19(B)(2)(a), R.C.2929.13(B)(1)(a)-(h) and R.C. 2929.13(B)(3). Therefore, appellant's third assignment of error is sustained to the extent the sentencing procedure was deficient as we have noted.
The judgment of the Court of Common Pleas of Marion County is affirmed in part and reversed in part and the cause is remanded for further sentencing proceedings not inconsistent with the judgment entered herein.
Judgment affirmed in part, reversed in part and causeremanded.
HADLEY and SHAW, JJ., concur.