**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**PETE GALEA`I, Defendant.**

High Court of American Samoa
Trial Division

CR No. 53-04

June 23, 2005

Before RICHMOND, Associate Justice; SAGAPOLUTELE, Associate Judge; and TAPOPO, Associate Judge.

Counsel: For Plaintiff, Julie Sione, Assistant Attorney General
 For Defendant, David Vargas

## ORDER GRANTING MOTION TO SUPPRESS STATEMENTS

### Background

On September 8, 2004, a young woman was seriously injured in her home. She told police that her boyfriend, Defendant Pete Galea`i ("Galea`i"), had assaulted her. Two days later, on September 10, 2004, at around 11:00 a.m., Galea`i was driving his car when he was stopped by several uniformed police officers who were following him in a marked police vehicle. The police officers walked up alongside Galea`i's car and asked Galea`i to get out of the vehicle. Galea`i asked why and the officers told him that they needed to speak to him with regards to his girlfriend's beating. Galea`i obliged and the officers took him to their squad car, put him in the back seat and drove him to the police station in Fagatogo. The officers did not handcuff or otherwise restrain Galea`i during the transit. Nor did they read him his *Miranda* rights or state that he was under arrest.

Once at the station, Galea`i and the officers stood on the station's front sidewalk, waiting for Sergeant Lusila Brown ("Sgt. Brown") to arrive. The officers told Galea`i that they were instructed to hold him until Sgt. Brown arrived because Sgt. Brown would be investigating the crime. When Sgt. Brown arrived, he approached and told Galea`i to accompany him to his upstairs office. Once upstairs, the two sat down and Sgt. Brown immediately asked Galea`i if he knew why he was there. Galea`i responded that he was there because he assaulted his girlfriend. Galea`i then went on to say that he assaulted her because he wanted her to learn a

lesson. Sgt. Brown then stopped Galea'i and verbally informed him of his *Miranda* rights. Galea'i responded that he understood those rights and then informed Sgt. Brown that he did not wish to make any further statements.

### Discussion

■ Police officers must administer a suspect his *Miranda* warnings whenever that suspect is in custodial interrogation. The facts indicate that at least some of Galea'i's comments to Sgt. Brown were uttered before the suspect received his *Miranda* warnings. Therefore, we must determine whether those statements where made while Galea'i was in custody and under interrogation.

### I. Custody

■ To determine whether a suspect is in custody, we must look at the totality of the circumstances confronting the defendant at the time of the questioning. *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004). The determination should be based on the "objective circumstances of the interrogation" rather than the "subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994). Thus, the relevant inquiry is whether a reasonable person in Galea'i's position would have felt at liberty to end the interrogation and leave.

Uniformed police officers stopped Galea'i while he was driving his car and asked him to exit his vehicle. The officers then told Galea'i that he needed to come with them. Galea'i was taken from his car and placed in the back of a marked squad car. The officers did not handcuff Galea'i nor tell him that he was under arrest; but they did not inform him that his presence was voluntary. The officers drove Galea'i to the police station where he was told that he must remain until Sgt. Brown arrived. The officers stood with Galea'i while they waited, and when Sgt. Brown arrived, Galea'i was escorted to his office where Sgt. Brown questioned Galea'i. During the questioning, apparently only Galea'i and Sgt. Brown were present in the room. And, lastly, Sgt. Brown did not tell Galea'i that he was free to go at any time during the questioning, but early in the meeting, Sgt. Brown informed Galea'i of his *Miranda* rights.

■ In *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990), the Eighth Circuit provided six "indicia of custody" which can be used in determining whether the police have taken a suspect into custody: (1) whether the suspect was informed at the time of the questioning that the questioning was voluntary; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the

suspect initiated contact with the authorities or voluntarily acquiesced to officer requests to respond to questions; (4) whether strong-arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning. Using these indicia, we will analyze Galea`i's situation to decide whether or not he was in custody at the time of the interview.

■ The first factor is whether the suspect was informed that the questioning was voluntary. Here, we find that at no time was Galea`i told that the questioning was voluntary. The second factor is whether the suspect possessed unrestrained freedom of movement during the questioning. Testimony tended to indicate that Galea`i was not free to move around as he wished during the questioning. In fact, he was told he must wait for Sgt. Brown in front of the police station before questioning. Also, when he was first taken to the station, the uniformed officers put him in their squad car rather then letting him drive himself. This indicates that they wanted to be certain that he went to the station, rather than go elsewhere. The third factor is whether the suspect initiated contact with the authorities. Here, according to Galea`i's testimony, the police pulled him over while he was driving and told him that he needed to come with them to the police station. The fourth factor is whether the police administered any strong-arm or deceptive tactics upon the suspect. There is no testimony thus far to indicate that Sgt. Brown or any other police officer used any such tactics upon Galea`i. The fifth factor of the test is whether the atmosphere during the questioning was police dominated. Here, the testimony tends to indicate that from the time he was stopped by the uniformed officers until the time the questioning ceased, Galea`i was under complete police control. He was put inside a police squad car, taken to the police station, and then placed within Sgt. Brown's office, all the while with a police officer at his side. The sixth factor is whether the suspect was placed under arrest at the end of the questioning. Although we have not heard any testimony relating directly to this factor, we can assume that Galea`i was not placed under arrest on the day in question because an arrest warrant was not issued in this case until September 13, 2004, three days after the interview.

In sum, we hold that the balance of the factors tip in favor of finding that Galea`i was in custody at the time of the interview. We find the fact that he was taken to the police station in a marked police car to be particularly compelling evidence. *See Ohio v. Conard*, 1997 WL 663673 at *6 (Ohio Ct. App. 1997) (cases analyzed therein appear to indicate that whether or not suspect is escorted to the police station in a squad car is a major factor in making a custody determination). Simply put, when a person is stopped by officers, told he must go to the police station and then put into the back of a marked police car, one would not expect that

person to feel that he could end the police encounter at will. Thus, we hold that Galea`i was in custody at the time of Sgt. Brown's September 10 interview.

## II. Interrogation

■ The United States Supreme Court has broadly defined interrogation as any police questioning of a suspect in custody "reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 n.7 (1980). A law enforcement agent's obligation to afford *Miranda* rights is triggered "whenever a person is subjected to either express questioning or its functional equivalent." *Innis*, 446 U.S. at 300-01.

■ Sgt. Brown testified that once Galea`i entered his office, he asked Galea`i if he knew why he had been brought in. (Brown Tr. at 6) ("First, I greeted him and I have asked him if he understands [sic] the reason why he was brought in . . . ."). Galea`i responded to that inquiry by divulging incriminating information. Upon hearing those incriminating statements, Sgt. Brown stopped Galea`i and advised him of his *Miranda* rights.

We hold that the above exchange constitutes interrogation. *Ohio v. Spain*, 602 N.E.2d 775, 776-77 (Ohio Ct. App. 1992) (holding that police officer was interrogating suspect by asking him: "Do you know why you're here?"); *Colorado v. Lowe*, 616 P.2d 118, 122 (Colo. 1980) ("Do you know why you are here" found to constitute interrogation) (overturned on separate grounds). By asking Galea`i whether he knew why he was at the police station, Sgt. Brown was inviting the suspect to discuss the alleged assault—a line of discussion that was reasonably likely to include some incriminating information. It was not as if the police suspected Galea`i to have some remote connection to a distant crime, leaving him unsure as to why he had been taken into the police station. The interview took place only two days after Galea`i had allegedly put his girlfriend in the hospital. Knowing that Galea`i was the only suspect in the police investigation and that a discussion of the case was about to ensue, Sgt. Brown should have administered Galea`i's *Miranda* warnings as soon as Galea`i entered the sergeant's office. Only then, if Sgt. Brown felt so inclined, should he have asked Galea`i if he knew why he was there.

■ Therefore, in sum, we hold that when Sgt. Brown began to question Galea`i at the police station on September 10, the suspect was in custodial interrogation and thus should have been given his *Miranda* warnings. However, according to Sgt. Brown's testimony, Galea`i responded to questioning by offering incriminating statements before such warnings were given and then chose to stay silent once Sgt. Brown

174

advised him of those rights. Apparently, the entire conversation related to the offense between Sgt. Brown and Galea`i was completed before Galea`i was advised of his *Miranda* rights. Therefore, we hold that the entire September 10 conversation between Galea`i and Sgt. Brown is suppressed because such conversation was in violation of Galea`i's Fifth Amendment right against self-incrimination.

### Order

Galea`i's motion to suppress his incriminating statements to Sgt Brown at the central police station on September 10, 2004, is granted. It is so ordered.