*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GROSS, GERRITY and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Levani J. ENELIKO**
Master-at-Arms Petty Officer Third Class (E-4), U.S. Navy
*Appellant*

**No. 202400058**

_____

Decided: 28 August 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Michael F. Whitican

Sentence adjudged 30 November 2023 by special court-martial tried at
Naval Base Bremerton, Washington, consisting of military judge alone.
Sentence in the Entry of Judgment: reduction to E-3.

For Appellant:
*Lieutenant Raymond E. Bilter, JAGC, USN*

For Appellee:
*Captain Jacob Carmin, USMC* (argued and on brief)
*Major Mary Claire Finnen, USMC (*on brief)

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

Appellant was convicted, contrary to his pleas, of one specification of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ).[1]

Appellant raises two assignments of error (AOE): (1) whether the military judge abused his discretion by not suppressing Appellant's statements to law enforcement; and (2) whether the military judge violated the confrontation clause when he admitted, over defense objection, drug lab documents based on the testimony of the Government's surrogate drug lab expert.[2] We find merit in Appellant's first AOE and set aside the findings and sentence. Because we find merit in the first AOE, we do not address the second AOE.

## I. BACKGROUND

On 17 May 2023, a member of Appellant's chain of command escorted him to a mental health appointment at Naval Hospital Bremerton. The escort was then ordered to take Appellant to the Naval Criminal Investigative Service (NCIS) spaces where he met Detective Whiskey and Special Agent Peters with the Criminal Investigation Division (CID) and NCIS, respectively.[3]

---

[1] 10 U.S.C. § 912a.

The Court recognizes Mr. Jimmy Murphy for his assistance and outstanding work on this case. Mr. Murphy joined us as an intern from Notre Dame Law School.

[2] Appellant also asserted a third AOE in accordance with *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), which we rephrase to: whether the convening authority violated Appellant's due process right to a trial before members by referring this charge to a military judge alone special court-martial in accordance with Article 16(c)(2)(A), UCMJ. We considered this matter and find it does not require discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

[3] All names in this opinion, other than Appellant, counsel, and the military judge, are pseudonyms.

Detective Whiskey was the lead investigator and conducted the interview regarding an allegation that Appellant had wrongfully used cocaine.[4] The interview lasted approximately 28 minutes.[5] Detective Whiskey began the interview by building rapport and asking Appellant about his previous mental health appointment, stating "[e]verything okay, I'm sure – I hope."[6] When Appellant said the appointment was at the "Brem hospital," the detective said "Well, I hope everything's working out for you."[7] Detective Whiskey then began asking Appellant for biographical data.[8]

Once he had collected the data and asked Appellant about his parents and what they do for a living, Detective Whiskey, without providing an Article 31(b) rights advisement, changed the questions in the interview to focus on the alleged criminal activity:

Detective Whiskey: I'm gonna read you your rights here in a second, but understand – you understand what you're here for?

Appellant: No, not exactly.

Detective Whiskey: Urinalysis.

Appellant: Okay.[9]

Detective Whiskey: Okay. And just to let you know, we're here to try to help you through this whole thing.

Appellant: Absolutely.

Detective Whiskey: Okay. And – but we can't help you if you can't, you know, tell us what happened and you can't, you know, help us out. Okay?

---

[4] Pros. Ex. 2.

[5] Pros. Ex. 2.

[6] Pros. Ex. 2; App. Ex. XLIV at 1.

[7] Pros. Ex. 2.

[8] Pros. Ex. 2.; App. Ex. XLIV at 2.

[9] The military judge noted in his ruling that Appellant also nodded his head in acknowledgment at this time. App. Ex. XXXII.

Appellant: Okay.[10]

The Detective then immediately provided Appellant his Article 31(b) rights advisement both verbally and in writing.[11] Appellant waived his 31(b) rights and subsequently confessed to the wrongful use of cocaine.[12]

Appellant filed a timely pretrial motion to suppress all statements he made on 17 May 2023 to law enforcement investigators.[13] Appellant challenged the knowing, intelligent, and voluntary nature of his rights waiver and statement.[14] The military judge denied Appellant's motion to suppress his statements, as well as a subsequent reconsideration motion filed by Appellant prior to trial.[15]

At trial, Appellant pleaded not guilty and sought to undermine not only his statements to Detective Whiskey but also to attack the credibility of the Naval Drug Screening Laboratory's (NDSL) testing process and results.[16] He introduced evidence challenging the chain of custody for his urine sample. In addition, he obtained concessions from the Government's drug lab expert that many, if not all, of the Government employees involved in the testing of his sample had been decertified one or more times for not following the NDSL's standard operating procedures.[17] The Government relied heavily on Appellant's statements during its closing argument.[18]

Additional facts necessary to resolve Appellant's AOE are discussed below.

---

[10] Pros. Ex. 2; App. Ex. XLIV at 9-10.

[11] App. Ex. XLIV at 10-13.

[12] App. Ex. XLIV at 12.

[13] App. Ex. XIV.

[14] App. Ex. XIV at 7; R. at 173.

[15] App. Ex. XXXII.

[16] R. at 247.

[17] R. at 440.

[18] R. at 459-60.

## II. DISCUSSION

### 1. Standard of Review

We review the military judge's ruling on Appellant's motion to suppress for an abuse of discretion.[19] The abuse of discretion standard recognizes that a judge has a wide range of choices and will not be reversed so long as the decision remains within that range.[20] Under an abuse of discretion standard, "[w]e will not overturn a military judge's evidentiary decision unless that decision was 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'"[21] Whether Appellant voluntarily, knowingly, and intelligently waived his Article 31(b) rights are questions of law that we review de novo.[22] In this case, we look specifically as to whether or not the military judge properly examined the totality of the circumstances to determine if Appellant's waiver of his rights was not only voluntary, but also knowing and intelligent.

### 2. Law

#### a. Article 31(b)

Article 31(b), UCMJ, requires a rights advisement when (1) a person subject to the UCMJ is (2) interrogating or requesting any statement (3) from an accused or person suspected of an offense, and (4) the questions can elicit a response about an offense of which the person questioned was accused or suspected.[23]

#### b. Waiver of 31(b) Rights

*Edwards v. Arizona* established that courts must treat the issues of voluntariness and knowing and intelligent waiver as "discrete inquiries."[24] These separate analyses address fundamentally different constitutional concerns. The voluntariness inquiry examines whether the waiver was "the product of a

---

[19] *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008).

[20] *United States v. Wilson*, 84 M.J. 383, 390–91 (C.A.A.F. 2024).

[21] *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004) (citing *United States v Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)).

[22] *United States v Lewis,* 78 M.J. 447, 453 (C.A.A.F. 2019).

[23] 10 U.S.C. § 831(b); *See United States v. Jones*, 73 M.J. 357, 361 (C.A.A.F. 2014) (footnotes omitted) (citing *United States v. Cohen*, 63 M.J. 45, 49 (C.A.A.F. 2006)).

[24] *Edwards v. Arizona*, 451 U.S. 477, 484 (1981).

free and deliberate choice rather than intimidation, coercion, or deception."[25] The inquiry into whether a rights waiver was knowing and intelligent determines whether the accused "understood his right to counsel and intelligently and knowingly relinquished it."[26] The accused must have "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[27]

In *United States v. Mott*, the Court of Appeals for the Armed Forces (CAAF) embraced the *Edwards* analysis and held that "the military judge abused his discretion by failing to analyze as a matter of law whether [a]ppellant could and did knowingly and intelligently waive his rights" in addition to whether the waiver was voluntary in accordance with *Edwards*.[28] The waiver analysis must examine the totality of circumstances, including "the accused's age, experience, education, background, and intelligence, and [his] capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights."[29] This obligation encompasses any circumstance that could reasonably affect an appellant's ability to make a knowing, intelligent, and voluntary waiver of Article 31(b) rights.

The CAAF found the military judge addressed the voluntariness standard but failed to conduct the full separate analysis that *Edwards* requires for knowing and intelligent waiver based on the facts of the case.[30] The military judge in *Mott* "erred when he addressed whether [a]ppellant's waiver was knowing and intelligent solely as a conclusory finding of fact, rather than as a conclusion of law" as the legal analysis must examine how specific circumstances relate to constitutional principles.[31]

---

[25] *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

[26] *Edwards*, 451 U.S. at 484.

[27] *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 427 (1986)).

[28] *United States v. Mott,* 72 M.J. 319, 326 (C.A.A.F. 2013).

[29] *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

[30] *Mott,* 72 M.J. at 331; s*ee United States v. Connelly*, 479 U.S. 157, 168 (1986).

[31] *Mott*, 72 M.J. at 332; s*ee United States v. Freeman* 65 M.J. 451, 453 (C.A.A.F. 2008).

### *3. Analysis*

#### *a. Detective Whiskey's pre-right's advisement comments*

As an initial matter, we note that in conducting his analysis of Appellant's motion to suppress, the military judge failed to consider important facts in his ruling. Prior to the interrogation, Detective Whiskey knew Appellant tested positive on a urinalysis and was suspected of a crime—wrongful use of cocaine, in violation of Article 112a, UCMJ. Appellant was escorted by a master-at-arms to NCIS to be interrogated about this crime. The initial questioning related to Appellant's background and building rapport, but then Detective Whiskey changed the direction of the interrogation to focus on the crime Appellant was suspected of committing. Detective Whiskey could have provided Appellant's Article 31(b) rights at any point during the initial portion of the interrogation, but instead waited to do so.

Detective Whiskey, instead of providing Appellant his 31(b) rights, stated "I'm gonna read you your rights here in a second, but understand – you understand what you're here for?" This question could have violated Article 31(b), because the question tends to elicit an incriminating response. Appellant responded "No, not exactly." Again, at this time, Detective Whiskey could have read Appellant his rights, but instead followed with "[u]rinalysis" which elicited a response from Appellant: "[o]kay" with an affirmative head nod. The military judge did not analyze whether this exchange occurred in violation of Article 31(b).[32] After having laid the groundwork for the interrogation, Detective Whiskey also stated immediately prior to Appellant's reading and waiver of his Article 31(b) rights, "[w]e're here to try and help you through this whole

---

[32] Appellant did not specifically challenge these questions either at trial or on appeal, and so we would review the military judge's admission of these statements for plain error, if at all, if it was only Appellant's responses to these questions at issue. However, we note for practitioners that several courts have found that an investigator's query to a suspect "do you know why you are here" has been found to be an interrogation under the circumstances. *See, e.g., State v. Spain,* 602 N.E.2d 775, 777 (1992); *People v. Thomas*, 2016 NY Slip Op 26024, 27 N.Y.S.3d 815, 821 (Cnty. Ct.) ("While 'Do you know why you're here' is perhaps a question routinely posed to suspects being interviewed by law enforcement, the court finds that based on the specific facts presented here, the defendant was entitled to be advised of his *Miranda* rights before being asked that question and the pre-*Miranda* statements are suppressed.").

thing . . . [w]e can't help you if you can't, you know, tell us what happened and you can't, you know, help us out."[33]

### b. *Mott analysis for knowing, intelligent, and voluntary waiver*

Applying *Mott*'s framework to this case reveals that the military judge failed to address the totality of the circumstances prior to the Article 31(b) rights being waived to determine if there was a knowing, intelligent, and voluntary waiver of rights. Specifically, the military judge did not address the propriety or any impact of Detective Whiskey's questions preceding Appellant's waiver of his Article 31(b) rights. The military judge also did not analyze the impact of Detective Whiskey's statement as to the help he could provide Appellant if he spoke to them and helped them out on whether Appellant was able or did then make a knowing and intelligent waiver of his rights.[34] In his ruling, the military judge did not analyze these issues in assessing the totality of the circumstances for the waiver and admission of the rest of Appellant's statements into evidence. Notably, the parties presented no testimony on the issue of Appellant's waiver other than the video of the interrogation and two post-hoc affidavits submitted in support and against Appellant's motion to suppress.

Without deciding whether Appellant made a voluntary, knowing and intelligent waiver of his Article 31(b) rights, we find the military judge's failure to address or analyze specific relevant facts of this case in determining if there was a voluntary, knowing and intelligent waiver requirement under *Mott* constitutes an abuse of discretion.

Having found the military judge erred in failing to consider the totality of the circumstances to determine not only whether Appellant's rights waiver was voluntary, but also whether it was knowing and intelligent, we must test for prejudice to determine whether the improperly admitted evidence was

---

[33] App. Ex. XXXII. In argument, Appellate Government Counsel conceded there was little help that NCIS could have provided Appellant, which the military judge did not analyze to determine the potential impact on Appellant's waiver.

[34] We note that the military judge's finding of fact that "there is *no evidence* to suggest that the accused was 'threatened, tricked, or cajoled' into waiving his rights" was clearly erroneous. As this appeal amply shows, there was at least *some* evidence of trickery or cajoling. The military judge's failure, therefore, to analyze this evidence under *Mott*'s framework in assessing the whether Appellant's waiver of rights was both voluntary *and* knowing and intelligent leaves us without a sufficient record to review the military judge's decision.

harmless beyond a reasonable doubt. As the CAAF has set forth, the question we must ask is whether there is a reasonable possibility that Appellant's confession, which was a large focus of the Government's closing argument, "might have contributed to the conviction."[35] Here, we find that the admission of Appellant's statement was not harmless beyond a reasonable doubt. The only evidence of Appellant's drug use, other than his confession, was the urinalysis, and Appellant vigorously attacked those results. While we acknowledge that a positive urinalysis alone may suffice to prove a charge for wrongful use of cocaine, we cannot say that there is no reasonable probability that Appellant's confession might have contributed to his conviction. Therefore, failing to analyze the totality of the circumstances in this case to determine if Appellant's waiver of his rights was knowing and intelligent was not harmless.

### III. CONCLUSION

After careful consideration of the record, the briefs of appellate counsel, and the oral arguments of appellate counsel, we hold that the military judge abused his discretion by failing to analyze the totality of the circumstances involving the waiver of Appellant's Article 31(b) rights in accordance with *Mott*. The finding of guilty and the sentence are **SET ASIDE**. A rehearing is authorized.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[35] *See Mott*, 72 M.J. at 333.